We'll move on to the fifth case Hanson Cold Storage v. NLRB May it please the court, my name is Don Vogel and I represent the appellant Hanson Cold Storage of Indiana. So the issue today that we'd like the court to address is whether the board's certification of the election results were improper or that certification is unsupported by substantial evidence in the record. Hanson operates a refrigerated warehouse in Hobart, Indiana, and Teamsters Local 142 filed an RC petition seeking to represent a group of those employees at that facility. There was an election held on February 29th, Leap Day, last year, and in the election there were 37 votes, 18 were cast for the union, 17 votes were cast for the employer, and we had two challenges. That issue today is really one challenge on the one unknown voter. That ballot is attached to the briefs as Appellant Tab 8, and it's our position that that voter obliterated his ballot and that therefore it should be voided. There was a number of proceedings before the board. The regional director took an offer of proof from the parties as to whether that ballot should be counted. That regional director relied upon a case, Kaufman Bakery, to determine that in fact as long as there is, if there are irregular markings, that therefore that's not sufficient if all the markings are contained within one of the boxes. We requested review of that certification then by the regional director, and the labor board chose not to review it. They determined that there was no issues, and what they said is it raises no substantial issues warranting review. So as a result of that, we believe this court should review this case not on the abuse of discretion standard that the board would assert, but rather as to whether there was substantial evidence to support the decision of the regional director. That decision by the board where they refused to review it, that in and of itself is not reviewable. So what happened then was that the local union sent a letter to Hansen demanding that they recognize it and they bargain. Hansen refused that, and it is that refusal which is really before the court and is the employer's first opportunity to dispute that ballot. Again, what we would argue is that this court should review the ballot on a substantial evidence basis, which is whether such relevant evidence, as there is a reasonable mind, might accept as adequate to support the conclusion of the board. Would you agree, Mr. Vogel, that the rule that was applied by the board or by the regional director, namely markings in only one of the boxes, unlike, for example, the erasures that we've seen elsewhere, that that rule is neutral as between unions and employers? I would. I would. Is it unreasonable? In this case, it certainly is. Why? Because the problem with the Kauffman decision is that they didn't attach the ballot at issue in that case. So what we're left with is the exact words of the case, which says that they will regard a mark in only one box, despite some irregularity. We don't know what the irregularity is. The board had the opportunity in this case. So you want us to refine the law of irregularity? Well, or simply to say that you agree in the other cases that analyze stray marks, that in this case the obliteration of the ballot is sufficient to avoid it. Our position and other cases that have reviewed similar markings like this, they do agree that this is an obliteration and, therefore, it's a no choice. Which cases are you relying on most on facts specific to the X? It's either emphasis or rubbing out, right? Well, you're right. I'm not quite sure what it is. I've done a few recounts, Mr. Vogel. I'm sure. I'm sure. I think, Judge Hamilton, that it's a rubbing out. First, I looked at it to see if maybe it was somebody's initials, which then if he was marking it and personalizing it, that would have avoided it. But it certainly looks like an obliteration. You know, you look at the Ruan transport case, which this court decided in 2012, there's a similar where there's an obliteration. There's somebody tried to highlight one of the votes with the same color as the pink ballot and then put an X in the other ballot. Clearly, that would. It looks like a dirty eraser in Ruan transport. It seems what that voter was trying to do was match the color of the ballot so that you could not see the X that he had originally placed. In this case. And clearly marked the other one. And clearly marked the other one. But before the courts find about clearly marking the other one, they're all agreeing that the original vote is obliterated. That's the first part of the analysis that the courts make and that the board should have made in all those cases is that the original vote is obliterated when they get to the one that is clearer. And in this case, my argument is that by obliterating it, by looking at it, the regionals director should have looked at it and determined that it was, in fact, a void ballot, a no-choice ballot, that the voter changed his mind. And, again, that's consistent with the other cases where there are markings in both boxes. I think the board had an opportunity to clarify that. They chose not to. Instead, they decided not to review it at all. And by the time that it comes before them on the employer's refusal to bargain, at that point they are rubber stamping what the regional director has already done. Remind me when the election was. February 29th of 2016. So we've delayed bargaining a year now. Well, if you can look at it certainly from that side, we have not bargained for over a year. Correct. Because the employer doesn't feel that it has an obligation to, because if you void this ballot, you then have an 18-17 vote count, and now the ballot of Mr. Kelly, which is sealed and not been reviewed, becomes determinative. The regional director did look at that, and he determined that that ballot should be counted, but because he found that this ballot was a yes vote, he decided not to look at Mr. Kelly's ballot. So that was 19-17, right? With this ballot, it was a 19-17 vote. If you would void this, it would be 18-17, and you would now need to look at Mr. Kelly's ballot to see which way he voted to determine if, in fact, it was a tie. The employer wins all ties. So what we would ask the court to do is to, in fact, find that in this instance where a voter has obliterated his ballot, which he certainly has, that the ballot should be voided and should not be counted, in which case we would ask this court to remand it back to the board to have them make a determination on the Lawrence Kelly ballot, which remains. So I'll reserve the remainder of my time. All right, thank you, Mr. Vogel. Ms. Sykes. May it please the court. I'm Molly Sykes for the National Labor Relations Board,  The board here did not abuse its discretion in overruling the company's challenge to the irregularly marked ballot and counting it as a vote for the union. Accordingly, the board properly certified the union, and the company has violated the act by refusing to recognize and bargain with it. Contrary to the company's claims, factual findings of the board are viewed under substantial evidence by this court, but the board's interpretation of the ballot is given greater deference due to the experience and expertise of the board, and is reviewed for abuse of discretion. This is noted in both AmeriCold logistics and in Ruan Transport, mentioned by the company. What kind of expertise do you bring to the table in assessing these kind of markings? What does the NLRB have that the average viewer wouldn't have? The NLRB has decades of experience in running representative elections and You're working off the presumption, aren't you? The Kauffman presumption. There's an indication, right? I appreciate that. But what if we have a situation, which may occur here, where there's a decision to vote and then to not vote? Let's just give the example where the X was marked initially, and then it was scratched out. Why isn't it also reasonable that that individual chose not to vote? Why isn't that a possibility, especially in a very small election? We haven't got hundreds of people. We've got, you know, just a few people. So sometimes there's pressure, you know, both sides, lawyer, employee. Why wouldn't it be reasonable to say this voter said, I wanted to vote yes, and I changed my mind? The board at Kauffman's addressed that direct issue. Prior to that in San Joaquin, the board reviewed markings like this to try to determine whether they were emphasizing a vote or crossing it out. Kauffman's actually explicitly rejected the theory of a no-choice vote, noting that the instructions of the ballot. What's the underpinning of that? I understand that Kauffman did it, but why should we accept that? Why are you precluding the possibility that I just raised to you as a hypothetical? So in this case, as in other ballot cases, the instructions on the ballot tell the voter to take their ballot, to make a marking, and if they spoil their ballot, that they can get a new ballot from the board agent. Exactly. And so in a case where an employee wishes to cancel out their vote or simply decides not to vote, the employee has the opportunity to take their ballot, take it to the board agent, and either get a new ballot or. . . And then he or she, Ms. Sykes, announces publicly they're not voting, right? They don't announce it publicly. They tell somebody. They do tell the board agent. They get a new vote, a new ballot. If they desire a new vote, they can have a new ballot. If they don't desire to vote at all, then they can simply hand the ballot, explain they made a mistake. So you're saying that's the only way out. You can't just spoil a ballot. You've got to spoil it and then take it out and say, I don't want to vote. Is that the only option? I would argue that the employer, the employee, could also make different markings on the ballot. There are other cases that the board has looked at with the conference presumption, looking more into the actual markings made in only one box. For example, in Rediamond-Chrysler, the ballot had an X in the S box and a question mark next to the X. And so this called into question, was the voter actually certain about their vote? Were they trying to say, I don't know about this. I'm canceling it. And in that case, the board did find that it was a voter expressed a preference, and absent clear negation of that preference, the board would honor it. But a case that could be much closer, for example, would be one where the voter did not want to cast a ballot. And he crossed it out. And crossed it out and then put no vote, wrote no vote. Or maybe he wrote no. Or maybe he wrote a variety of things that the board has looked at. And in this case, the voter didn't do any of those things, did not take the ballot to the board agent, did not make any other markings on the ballot, such as in the no box or write something on the ballot. The voter actually took the ballot, made a marking, and put it in the ballot box. Yeah, but he scratched it out. Well, which marking was first? That's impossible to tell in this case. And one option is that he was scratching it out. Another option is that he made his X first and was emphasizing it. And yet another option is that he had his ballot. He was in a rush. He puts it down. He marks in yes. Then he reads the directions. He needs an X. Puts a big X there. Turns it in. There are numerous explanations for, like, what this could mean. And the issue here is that the board is not going to speculate as to what this means or what it could mean or anything of that sort. The board is going to apply a presumption that ensures standardization. Doesn't the presumption carry with it speculation, Ms. Sykes? I would argue that it does not. Here there's a clear indication of voter intent. And this presumption is for the sake of not only standardizing ballot interpretation and not only is it reasoned by Cawthons as being a reasonable interpretation, but it's also a way to avoid unnecessarily disenfranchising voters like this through challenges similar to the case at hand. There's only one instruction on the ballot, isn't there? Yes. There's the instruction to place an X in the box. Well, yeah, but then it also says what to do if you don't. Yes. It also says do not sign it, fold it, drop it in the box. Ask for a new one if you don't want to. Yes. Do you agree that this is a rule that the presumption is neutral as between employers and unions? Yes, and as an example of that, in Hamilton Plastic Products, a voter placed four diagonally bisecting lines similar to a spider web in the entire no box, the gray part of the no box and the white part, with no discernible X. The board looked at this, it applied Cawthons' presumption, and counted it as a no vote. And this decision was affirmed by the 11th Circuit. And so, yes, there is no bias towards unions or employers in this way. Well, the best way to have no bias is if you have a vote that's hard to determine, absent a presumption, is to make a no vote. That's the way to have balance between both sides, right? To make this a no vote or to void it? If you don't have a clear vote, yes or no, isn't the best way to assure that it doesn't impact the election is to count it as a no vote? Respectfully, I disagree, Your Honor. The board could adopt a more rigid policy regarding its ballots, such as saying that you need an X, a clear X. We're going to void anything else. But the board has not done so because of important policy considerations. The board emphasizes the need to try to discern voter intent whenever possible and to avoid unnecessarily disenfranchising voters. And so we balance those interests with interests such as avoiding speculation, and Cawthons here, and using Cawthons, does avoid speculation as to whether is this a markout or is it an attempt to avoid disenfranchising this voter who might well not know that this is being viewed as being crossed out. Perhaps he is meaning to emphasize. The board's view is if this also appeared as it appears now in the yes box, in the no box, it would be considered a no vote. Yes. Absent marks in the other box, the board would vote. Yeah, absent. I mean, just a flip of what we have here. If it was in the no box, it would be a no vote. And so the board did not improperly speculate here as to the voter's intent. As mentioned, actually it would be speculation for the board to accept the company's argument and claim that this is crossing out the vote. That would be making a decision as to the intent of the voter. So is it the board's position, using the Cawthon presumption, if one box is completely clear and in the other box there's anything, let's say just a question mark, that's an indication for that vote yes or no? Let me clarify. You're saying one box has markings and the other box has the question mark? Yeah, a question mark. And I'm not saying yes or no. You have a clear box and a box with a question mark. So the board's presumption would be there's some kind of indication of something in the one box. And so you don't want to disenfranchise that person. So you count that as a yes or a no, depending on where it's at. Actually, in dual case, in dual marked ballots such as those, such as in ruined transport, the board has a necessarily more complicated decision to make. Is this a yes vote, a no vote, or no vote at all? There are markings in both boxes. In that case, the board often looks for some sign that the voter is negating one of their choices. And absent that, the ballot is void. I thought the question was, suppose one box is totally empty and the other one has a question mark in it. I think that would be an argument against the presumption. And so if the board applied the presumption, the union or the employer, whoever was affected could try and rebut that presumption. What I'm asking, Ms. Sykes, is does the presumption command that the question mark, whether yes or no, doesn't matter? Does the presumption command in the eyes of the board that that count as a vote? Ordinarily, yes, that markings in one box. And the emphasis is that there are markings in only one box. However, as I've said, the markings do matter. For example, if you write no in the yes box. How about a hashtag? Excuse me? How about a hashtag? That would be an interesting way to go, I do think so. The Indiana Supreme Court once decided to recount with a magnifying glass to decide whether the mark was an X or a Y. And if it was a Y, it wasn't going to be counted. You can get carried away with some of this. But I take it the board hasn't yet decided the question mark case. No, it has not. That has not yet come before the board. And if the court has no further questions, we would ask that the court enforce the board's order. And I thank you for your attention. Thank you, Ms. Ellis. Mr. Volkman. Thank you. I think the points being raised are, indeed, ones that require the board to do a review as to determine what the voters intent is. Well, but if we're compelled to apply the Kaufman presumption, it doesn't matter, seemingly, from the board's position, as long as something's in one box and nothing is in the other box, that carries the day for the board. And I think that's why the board's wrong in its blanket decision to uphold a presumption where there's only markings in one box. This court in Sioux Products reviewed a ballot where the guy put a smiley face in one of the boxes. And they looked to see what the intent of that was. Okay? And it goes back to. What was the answer? The answer was that they said it was a no vote in that case. There was an X in the ballot, and below it he had a smiley face. Okay? And that was the only marking in that. And the court held that that was not just a stray mark, and it didn't really impact the intent of the voter. But the court looked at what was the intent of the voter. It counted as a vote because they were able to tell what the intent of those marks were. And in this case, if you look at it, I think that you cannot tell what the intent is. The intent is, as you said, a no-choice vote. Well, we don't know. I mean, I'm just raising that hypothetical. I am asking respectfully the court to hold that it should be a no-choice vote because you don't know what the intent is, and it is not clear on the face. And as a result, it should be voided. Thank you very much. Thank you, Mr. Bogle. Thank you, Ms. Sykes. Case is taken under advisement.